**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**


Civil Action No. 1:20-cv-00627-NYW-MDB

**MONICA ACOSTA**

      Plaintiff,

v.

**PUEBLO SCHOOL DISTRICT NO. 60, and
JONATHAN DEHN, in his individual capacity,**

      Defendants.

---

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS OPPOSED BY PLAINTIFF**

---

2

**DEFENDANTS' INSTRUCTION NO. 1**
**EXPERT WITNESSES**

Witnesses are generally limited to testifying about what they saw, heard, felt or other matters relating to the five senses.  In some situations, however, scientific, technical, or other specialized knowledge may assist you in understanding the evidence or in finding a fact to be true or not true.  A witness who has special knowledge, skill, experience, training, or education, may testify and state his or her opinion based on that background.  When a witness is qualified to express an opinion based on his or her expertise, that witness's background is relevant to the credibility of such opinion.

You do not have to accept expert opinions.  You should consider opinion testimony just as you consider other testimony in this trial.  Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the reasons given for the opinion, and other evidence in the trial.[1]

---

[1] Senior Judge Kane, U.S. District Court of Colorado, Sample Jury Instruction No. 1.8 (May 2021).

**DEFENDANTS' INSTRUCTION NO. 2**
**CHARTS AND SUMMARIES**

Charts or summaries that are not received in evidence are known as demonstratives, while charts or summaries that are received in evidence are exhibits.

The only purpose of a demonstrative chart or summary is to help explain the evidence in the case.  The demonstrative is not evidence itself and does not prove any fact.

Some charts or summaries, however, are evidence because they accurately and reliably summarize complex or voluminous evidence in a manner that may assist you in understanding that evidence.  Such a summary or chart exhibit is only as valid and reliable as the underlying evidence it summarizes and is not independent evidence on its subject matter.[2]

---

[2] Senior Judge Kane, U.S. District Court of Colorado, Sample Jury Instruction No. 2.0 (May 2021).

## DEFENDANTS' INSTRUCTION NO. 3
## <u>PROBATIONARY TEACHER DEFINED</u>

The parties stipulated that Ms. Acosta was a probationary teacher at Beulah Heights Elementary both years she was employed by the School District as defined by C.R.S. § 22-63-103(7), which states that a probationary teacher "means a teacher who has not completed three consecutive years of demonstrated effectiveness[.]"[3]

---

[3] C.R.S. § 22-63-103(7).

**DEFENDANTS' INSTRUCTION NO. 4**
**NONRENEWAL OF A PROBATIONARY TEACHER'S CONTRACT**

The parties stipulated that Ms. Acosta was a probationary teacher at Beulah Heights Elementary during all relevant times in this case whose contract was subject to the nonrenewal provisions of C.R.S. § 22-63-203(3)-(4).  You must accept this fact as true.  Nonrenewal means the involuntary termination of employment of a probationary teacher by a school district's board of education.

The relevant nonrenewal portions of C.R.S. § 22-63-203 provide:

(3) A probationary teacher employed by a school district on a full-time basis shall be deemed to be reemployed for the succeeding academic year … unless the board causes written notice to the contrary to be given to said teacher on or before June 1 of the academic year during which said teacher is employed.

…

(4)(a)  The chief administrative officer of the employing school district may recommend that the board not renew the employment contract of a probationary teacher for any reason he deems sufficient. If the board, based upon such recommendation, does not renew the employment contract of a probationary teacher, such teacher shall be given a written notice of contract nonrenewal.[4]

---

[4] C.R.S. § 22-63-103(5); C.R.S. § 22-63-203(3)-(4).

**DEFENDANTS' INSTRUCTION NO. 5**
**SECTION 1983 CLAIM AGAINST DEFENDANT JONATHAN DEHN IN HIS**
**INDIVIDUAL CAPACITY—INTRODUCTORY INSTRUCTION**

The law to be applied in this claim is the federal civil rights law, which provides a federal remedy for persons who have been deprived by government employees (including school district employees) of the rights, privileges, and immunities secured by the United States Constitution and federal statutes.

Section 1983 of Title 42 of the United States Code, the federal civil rights statute under which Ms. Acosta sues, provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Therefore, in order to prevail on her Section 1983 claim against Defendant Jonathan Dehn ("Mr. Dehn"), Ms. Acosta must prove each of the following elements by a preponderance of the evidence:

1.    Mr. Dehn acted under color of state law; and

2.    the acts of Mr. Dehn deprived Ms. Acosta of her rights under the United States Constitution as explained in the Instructions ▮▮ below.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. I instruct you that Mr. Dehn acted under color of state law, and you must accept this fact as true.[5]

---

[5] 42 U.S.C. § 1983; Pattern Civ. Jury Instr. 9th Cir. § 9.3 (2022) (modified).

7

**DEFENDANTS' INSTRUCTION NO. 6**
**SECTION 1983 CLAIM AGAINST DEFENDANT JONATHAN DEHN IN HIS**
**INDIVIDUAL CAPACITY—FIRST AMENDMENT GENERALLY**

Ms. Acosta asserts that the Mr. Dehn is liable for depriving her of her rights secured under

the First Amendment to the Constitution of the United States.

The First Amendment to the Constitution of the United States provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

As such, the First Amendment generally prohibits a government employer from

discharging an employee because the employee engaged in relevant protected activities as fully

explained in Instruction ___.[6]

---

[6] U.S. Const. amend. I; *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 268 (2016).

**DEFENDANTS' INSTRUCTION NO. 7**
**SECTION 1983 CLAIM AGAINST DEFENDANT JONATHAN DEHN FOR FIRST AMENDMENT RETALIATION: <u>BURDEN-SHIFTING ELEMENTS</u>**

Ms. Acosta claims that Mr. Dehn violated her rights under the First Amendment to the United States Constitution. More specifically, Ms. Acosta claims that Mr. Dehn recommended that her probationary teaching contract be nonrenewed in retaliation for Ms. Acosta's exercise of her First Amendment rights to freedom of speech and association by participation in the May 7, 2018 teachers' strike.

The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. I instruct you that Ms. Acosta's strike-related activity, *i.e.* participation in the May 7, 2018 teachers' strike, were matters of public concern protected by the First Amendment.

Therefore, at trial, Ms. Acosta must prove by a preponderance of the evidence that:

1.      She suffered an adverse employment action; and

2.      Her strike-related activities were a substantial motivating factor in Mr. Dehn's decision to recommend Ms. Acosta's contract be nonrenewed.

The parties have agreed that Mr. Dehn's recommendation that Ms. Acosta's contract be nonrenewed was an "adverse employment action." You must accept this fact as true.

As to the second element, to prove that Ms. Acosta's strike-related activities were a substantial motivating factor in Mr. Dehn's recommendation to nonrenew her contract, Ms. Acosta need not show that her strike-related activities were the sole reason for Mr. Dehn's recommendation. Rather, Ms. Acosta must prove by a preponderance of the evidence that her strike-related activities played a substantial part in Mr. Dehn's decision to recommend her nonrenewal.

8

If you find that Ms. Acosta failed to show this element of her claim, your verdict should be for Mr. Dehn.

If, on the other hand, you find that Ms. Acosta has proved this element, the burden then shifts to Mr. Dehn to demonstrate by a preponderance of evidence that he would have reached the same decision in the absence of Ms. Acosta's strike-related activities.  In other words, if Mr. Dehn demonstrates that with or without the improper motivation the alleged retaliatory decision would have occurred, you must return a verdict in favor of Mr. Dehn.

If you find that (1) Ms. Acosta has proved the second element of her First Amendment claim and (2) Mr. Dehn failed to prove that he would have reached the same decision anyway, then Mr. Dehn violated Ms. Acosta's First Amendment rights and your verdict must for Ms. Acosta on this claim.  If so, you must determine Ms. Acosta's damages, if any, as explained in Instructions ___.[7]

---

[7] Pattern Civ. Jury Instr. 9th Cir. § 9.3 (2022) (modified); Pattern Civ. Jury Instr. 5th Cir. § 10.6 (modified); ECF No. 77, p. 5; n.4 (finding that Plaintiff's protected First Amendment activities included public picketing/demonstrating as well as organizing and demonstrating in a public-employee strike); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007) (stating that when a plaintiff has both freedom of speech and association claims then supports those claims by asserting that she associated in order to discuss the same speech supporting a freedom of speech claim that the analysis of both First Amendment claims are "effectively indistinguishable."); *Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1236 (10th Cir. 2009); *Maestas v. Segura*, 416 F.3d 1182, 1188-89 (10th Cir. 2005); *Trant v. Oklahoma*, 754 F.3d 1158, 1167–68 (10th Cir. 2014).

**DEFENDANTS' INSTRUCTION NO. 8**
**SECTION 1983 CLAIM AGAINST DEFENDANT JONATHAN DEHN FOR FIRST**
**AMENDMENT RETALIATION: <u>COMPENSATORY DAMAGES</u>**

I am now going to instruct you on damages.  If you find for Ms. Acosta on her Section 1983 claim, you must consider the issue of compensatory damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not Mr. Dehn should be held liable.  Damages mean the amount of money that will reasonably and fairly compensate Ms. Acosta for any injury she actually sustained as a result of Mr. Dehn's conduct.

Ms. Acosta has the burden of proving compensatory damages by a preponderance of the evidence.  Ms. Acosta meets her burden should the evidence show that her injuries or damages are proximately caused by Mr. Dehn's recommendation to nonrenew her contract.  This showing is made whenever it appears from the evidence that Mr. Dehn's role in the nonrenewal of Ms. Acosta's contract played a substantial part in bringing about any injury to Ms. Acosta, and that Ms. Acosta's injury or damage was either a direct result or a reasonably foreseeable consequence of Mr. Dehn's act.

Damages may not be based on speculation or sympathy.  They must be based on the evidence presented at trial, and only that evidence.

You should consider the following elements of damage to the extent you find them <u>proved</u> by a preponderance of the evidence, and no others:

> 1.  The reasonable value of any of wages and employment benefits Plaintiff has lost from the date of Plaintiff's nonrenewal through August 2019, minus the amounts Plaintiff has earned from other employment during this period.
>
> 2.  The reasonable value of any of Ms. Acosta's other monetary expenses from the date of Ms. Acosta's nonrenewal through August 2019.

10

3.      Ms. Acosta's emotional and mental harm during and after the events
at issue, including mental anguish and reputational harm.

The purpose of compensatory damages is to make Ms. Acosta whole—that is, to compensate her for the injuries or damages she has suffered which were proximately caused by Mr. Dehn's act or omission.[8]

---

[8] Pattern Civ. Jury Instr. 3rd Cir. § 4.8.1 (2022) (modified); O'Malley, Grenig & Lee, 3B Fed. Jury Prac. & Instr. §§ 168:42 & 168:60 (6th ed. 2023) (modified); *Gansert v. Colorado*, 348 F. Supp. 2d 1215, 1230 (D. Colo. 2004) (collecting cases stating that Section 1983 compensatory damages includes backpay and may be properly submitted to jury, but not equitable remedies front pay or, alternatively, reinstatement); *D.C. v. Hasratian*, 2018 WL 9991275, at *1 (D. Utah Jan. 26, 2018) (articulating the standard for the calculation of back pay and stating that it was a "simple mathematical function"); Pl's Responses to Defs.' Rogs. 3 and 8 (admitting that she was not seeking future lost earnings because her earnings at Elizabeth School District on or about August 2019 "[met] or exceed what I would have earned had I remained employed at by the School District"); Pl's Fed. R. Civ. P. 26(a)(2) Expert Report of Dr. Jane Lillydahl, pp. 3-5 (same); Pl's Dep. at 19:5-23:8 (confirming Elizabeth School District employment history and salary).

**DEFENDANTS' INSTRUCTION NO. 9**
**BREACH OF CONTRACT CLAIM AGAINST DEFENDANT PUEBLO SCHOOL**
**DISTRICT NO. 60: <u>ELEMENTS OF LIABILITY</u>**

For Ms. Acosta to recover from the School District on her second claim for breach of

contract, you must find that Ms. Acosta has proved both of the following elements by a

preponderance of the evidence:

1.    Defendant Pueblo School District No. 60 entered into a contract with Pueblo
      Education Association to prohibit and refrain from engaging in retaliation against
      any School District employee for his or her support for or involvement in the May
      7, 2018 teachers' strike; and

2.    Defendant Pueblo School District No. 60 failed to follow this provision when its
      Board of Education voted to nonrenew Ms. Acosta's probationary teacher's
      contract.

If you find that Mr. Dehn violated Ms. Acosta's First Amendment rights under Instructions

___, you are instructed that you must find that Ms. Acosta met her burden of proof for the second

element of this claim.  On the other hand, if you find that Mr. Dehn did not violate Ms. Acosta's

First Amendment rights, then you must find that Ms. Acosta failed to meet her burden of proof for

the second element of this claim.

If you find that either or both of these elements have not been proven by a preponderance

of the evidence, then your verdict must be for the School District.

On the other hand, if you find that both of these elements have been proven by a

preponderance of the evidence, then your verdict must be for Ms. Acosta.[9]

---

[9] CJI-Civ. 30:10 (2022) (modified); ECF No. 77, pp. 18-19.

**DEFENDANTS' INSTRUCTION NO. 10**
**BREACH OF CONTRACT CLAIM AGAINST DEFENDANT PUEBLO SCHOOL**
**DISTRICT NO. 60: <u>DAMAGES—GENERAL</u>**

If you find in favor of Plaintiff Monica Acosta on her claim for breach of contract, then you must award general or nominal damages.

To award general damages, you must find by a preponderance of the evidence that Ms. Acosta had damages as a result of the breach, and you must determine the amount of those damages.

"General damages" means the amount required to compensate Ms. Acosta for losses that are the natural and probable consequence of the School District's breach of the contract.

Losses that are a "natural" result of a breach are those losses that an ordinary person of common experience would expect to follow from a breach.

Losses are "probable" if the losses were reasonably foreseeable when the contract was made and would likely occur if the contract were breached.

If general damages have been proved, you shall award the Ms. Acosta damages for:

1.      The reasonable value of any of wages and employment benefits Ms. Acosta has lost from the date of Ms. Acosta's nonrenewal through August 2019, minus the amounts Ms. Acosta has earned from other employment during this period.

2.      The reasonable value of any of Ms. Acosta's other monetary expenses from the date of Ms. Acosta's nonrenewal through August 2019.

If you find in favor of Ms. Acosta, but do not find any general damages, you shall award the Ms. Acosta nominal damages in the sum of one dollar.[10]

---

[10] CJI-Civ. 30:37-38; 30:41 (2022) (modified); Pl's Responses to Defs.' Rogs. 3 and 8 (admitting that she was not seeking future lost earnings because her earnings at Elizabeth School District on or about August 2019 "[met] or exceed what I would have earned had I remained employed at by the School District"); Pl's Fed. R. Civ. P. 26(a)(2) Expert Report of Dr. Jane Lillydahl, pp. 3-5 (same); Pl's Dep. at 19:5-23:8 (confirming Elizabeth School District employment history and salary).

**DEFENDANTS' INSTRUCTION NO. 11**
**FAILURE TO MITIGATE DAMAGES**

If you find that Ms. Acosta has had damages, then you must consider whether the School District and Mr. Dehn have proved their affirmative defense of Ms. Acosta's failure to mitigate or minimize damages. Ms. Acosta has a duty under the law to take reasonable steps under the circumstances to mitigate or minimize her damages. Damages, if any, caused by Ms. Acosta's failure to take such reasonable steps cannot be awarded to Ms. Acosta.

This affirmative defense is proved if you find the following two elements have been proven by a preponderance of the evidence:

1. Ms. Acosta failed to take reasonable steps to mitigate or minimize her damages; and

2. Ms. Acosta has incurred increased damages because she did not take the reasonable steps to mitigate or minimize her damages.

If you find that the School District and Mr. Dehn have proved both of the elements by a preponderance of the evidence, then you must determine the amount of damages caused by Ms. Acosta 's failure to take such reasonable steps. This amount must not be included in your award of damages.

On the other hand, if you find that the School District and Mr. Dehn have not proven one or both of these two elements by a preponderance of the evidence, then you shall make no deduction from Ms. Acosta 's damages.[11]

---

[11] Judge Arguello, U.S. District Court of Colorado, Sample Jury Instruction No. 17 (modified); s*ee also* Pattern Civ. Jury Instr. 3rd Cir. § 4.8.1 (2022).